UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-4083
_____

HOWARD YERGER; DONALD BORODKIN;
ROBERT COLSON; JOHN DRIESSE; GORDON FRANK;
DUNCAN FULLER; DR. CARMEN OCCHIUZZI;
AMY THEOBALD, individually, and on behalf of all others
similarly situated,

Appellants

v.

MASSACHUSETTS TURNPIKE AUTHORITY

_____

On Appeal from the United States District
For the District of New Jersey
(D.C. Civil Action No. 2-08-cv-05261)
District Judge: Honorable Peter G. Sheridan

_____

Submitted Under Third Circuit LAR 34.1(a)
September 22, 2010
_____

Before:  MCKEE, Chief Judge, AMBRO and CHAGARES, Circuit Judges

(Opinion filed: September 30, 2010)

_____

OPINION
_____

AMBRO, Circuit Judge

This case involves a dispute over a toll discount program administered by the Massachusetts Turnpike Authority ("MTA").  Plaintiffs filed a complaint alleging violations of the Commerce Clause, U.S. CONST. ART. I, § 8, cl. 3, Equal Protection Clause, U.S. CONST. AMEND. XIV, § 1, and Privileges and Immunities Clause, U.S. CONST. ART. IV, § 2.  As the District Court noted, it appears that appellants were seeking a more sympathetic audience than the Court of Appeals for the First Circuit, which upheld the same discount program against a Commerce Clause challenge.  Citing *Doran v. Mass.,* 348 F.3d 315 (1st Cir. 2003), the District Court granted the MTA's motion to dismiss.  We are similarly unmoved by appellants' arguments, and thus affirm.

## I.  Background

Nine states in the New England and Mid-Atlantic region participate in a common electronic toll payment system called E-ZPass.[1]  Unlike these states, Massachusetts administers its own system.  Both systems function the same way–they allow tolls to be collected from a driver's prepaid account through an electronic transponder device.  Drivers holding transponders may use designated lanes in which they can pay tolls without stopping to interact with a cashier.  There are no residency requirements on subscriptions to either system–residents of any state may subscribe to Fast Lane, E-ZPass, or both.

At issue here is the Fast Lane Discount Program ("FLDP"), administered by the MTA.  The FLDP provides discounts to users of Fast Lane but not to users of E-ZPass,

---

[1] These states include Maine, New Hampshire, New Jersey, Rhode Island, New York, Pennsylvania, Delaware, Virginia, and West Virginia.

2

although drivers holding transponders from each program may travel the same routes and use the same toll booths.

Appellants are residents of New Jersey, New Hampshire, and Massachusetts. They subscribe to E-ZPass but not Fast Lane. Appellants allege that, during their use of the Fast Lane toll booths on the Massachusetts Turnpike, they were charged a higher toll amount than Fast Lane subscribers in violation of their constitutional rights.

## II. Jurisdiction and the Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal for failure to state a claim. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 63-64 (3d Cir. 2008). "When considering a district court's grant of a motion to dismiss under Rule 12(b)(6), 'we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" *Id.* at 64. In order "[t]o survive a motion to dismiss, a complaint must "contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. Discussion

To repeat, appellants claim that the Fast Lane Discount Program (1) creates an undue burden on interstate commerce and therefore violates the Commerce Clause, (2) violates the Equal Protection Clause of the Fourteenth Amendment, and (3) discriminates against out-of-state citizens in violation of the Privileges and Immunities Clause. We disagree, and address each argument in turn.

3

## A. Commerce Clause

The Commerce Clause of the United States Constitution grants Congress the authority to "regulate Commerce…among the several States." U.S. CONST. ART. I, § 8, cl. 3. It also has an implied requirement—called the "dormant" Commerce Clause—that limits the power of the states to discriminate against interstate commerce by forbidding "'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Cloverland-Green Springs Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 462 F.3d 249, 261 (3d Cir. 2006) (quoting *Granholm v. Heald*, 544 U.S. 460, 472 (2005)).

In order to determine whether a state law violates the dormant Commerce Clause, we engage in a two-fold inquiry. First, we consider whether the law discriminates against interstate commerce on its face or in effect. *Id.* If we determine that it does, heightened scrutiny applies, and the burden shifts to the state to prove that "the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means." *Id.* If we determine that it does not, we consider whether the law is invalid under the balancing test set forth in *Pike v. Bruce Church, Inc.,* 397 U.S. 137 (1970). Under the *Pike* balancing test, we decide "whether 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Cloverland*, 462 F.3d at 263 (quoting *Pike*, 397 U.S. at 142).

### 1. FLDP does not discriminate on its face

Appellants assert that the FLDP is discriminatory on its face because the MTA imposes a higher toll on users of out-of-state E-ZPass transponders than on users of in-

4

state Fast Lane transponders.  They claim that the MTA is discriminating against interstate commerce itself by placing a higher toll on the out-of-state toll transaction than the in-state toll transaction.  We disagree.

Appellants cite a series of cases to support the proposition that a state cannot discriminate against transactions with some interstate element.  *See, e.g., Fulton Corp. v. Faulkner*, 516 U.S. 325, 331 (1996); *Or. Waste Sys v. Dep't of Envtl. Quality of Or.,* 511 U.S. 93, 99-100 (1994).  Each of the cases cited, however, involves a classification or distinction that forms the basis of the facial discrimination.  For example, in *Fulton* the Court struck down a North Carolina statute that provided for a deduction against an intangibles tax on stock, available only to residents, equal to the fraction of the corporation's income subject to state tax.  *Fulton*, 516 U.S. at 327-28.  In *Oregon Waste Systems*, the Supreme Court struck down an Oregon law that imposed a surcharge of $2.25 per ton on waste generated out-of-state but disposed of within the state.  511 U.S. at 96.   Both of these cases, which are representative of the authorities cited by appellants, involve a state law that discriminated by its express terms against out-of-state interests.

The FLDP does not discriminate on its own terms.  Enrollment in Fast Lane is open to everyone.  As the *Doran* court aptly reasoned, "[t]he FLDP is available on identical terms to drivers without regard to their residence; the program incorporates no distinctions or classifications based on residence and participation is open to anyone. . . ." *Doran*, 348 F.3d at 319.  In each of the cases cited by appellants, out-of-staters were prevented entirely from obtaining the benefits or avoiding the burdens of the state law at issue.  In this case, the MTA has not limited a benefit solely to residents; rather, it simply

5

offers more competitive toll rates to those individuals, from all states, who choose to enroll in Fast Lane.

## 2. FLDP does not discriminate in effect

Appellants also claim that the FLDP has a discriminatory effect on interstate commerce. Again, we disagree.

To support their argument, appellants cite *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977), in which the Supreme Court struck down a facially neutral North Carolina statute that required all containers of apples sold in the state to bear no other grade than a federal grade because the statute had the effect of discriminating against Washington State apple growers. The Court held that the statute forced Washington growers and dealers to "alter their long-established procedures at substantial cost," and thus took away the competitive advantage Washington apple growers earned though their expensive and unique grading system, resulting in a "leveling effect which insidiously operate[d] to the advantage of local apple producers." *Id.* at 351.

Unlike *Hunt*, this case does not present a situation where eligibility or access to a state benefit (or imposition of a state burden) is premised on some seemingly neutral criteria that serve merely as a proxy designed to discriminate against out-of-state residents. Although the FLDP requires participants to enroll in Fast Lane in order to receive discounts, the enrollment burden is the same for in-state and out-of-state residents. While benefits of the FLDP accrue to many residents of Massachusetts, they also accrue to every non-resident participant in the program. Stated another way,

6

residents of Massachusetts receive no benefit that is not available to non-residents on equal terms. As the *Doran* Court noted, the fact that "the incentive to participate varies across drivers does not make the program discriminatory. That incentive 'affects local and out-of-state vehicles in precisely the same way, and thus does not implicate the Commerce Clause.'" *Doran*, 348 F.3d at 320 (quoting *Am. Trucking Ass'n v. Scheiner*, 483 U.S. 266, 283 n.15 (1987)).

### 3. *Pike* Balancing Test

As the FLDP does not trigger heightened scrutiny, we proceed to the balancing test set forth in *Pike*. Under that test, "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142.

Appellants contend that the FLDP burdens interstate commerce because (1) it imposes a financial burden on the use of E-ZPass over Fast Lane and (2) most E-ZPass users live out-of-state while most Fast Lane users live in-state. Appellants are incorrect. As the *Doran* Court held, the FLDP does not even implicate the *Pike* balancing test because it is available on equal terms to residents and non-residents, and thus places no burden on interstate commerce. *Doran,* 348 F.3d at 322.

Appellants cite *Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520 (1959), a pre-*Pike* case, in which the Supreme Court struck down a facially neutral law because the burden on interstate commerce outweighed the public benefits. The law required all trucks travelling through Illinois to have contoured mud flaps, while at the same time, under

7

Arkansas law, trucks were required to be equipped with straight mud flaps. *Id. at* 527.

The Court held that the Illinois law violated the Commerce Clause because, "if a trailer

[were] to be operated in both States, mudguards would have to be interchanged, causing a

significant delay in operation where prompt movement may be of the essence." *Id.*

Appellants analogize to *Bibb*, asserting that drivers who wish to carry both in-state

and out-of-state transponders must perform a "swap-and-stuff" [2] to prevent being double-

charged for tolls. However, appellants ignore two key differences between *Bibb* and the

current case. First, neither Fast Lane nor E-ZPass prohibits drivers from carrying more

than one transponder. So, unlike in *Bibb*, where truck drivers were unable to comply

simultaneously with Illinois and Arkansas law, residents of all states are free to

participate in both programs at the same time. *See Bibb*, 359 U.S. at 527. Second, to the

extent that drivers residing in- and out-of-state choose to carry more than one transponder

(though out-of-state residents who commute regularly to Boston each day might very

well decide to carry only a Fast Lane transponder), the delay to drivers caused by placing

a transponder into a foil bag is negligible compared to the "significant delay in operation"

that the Supreme Court recognized would result if truckers were forced to change

mudguards before crossing state lines. *Id.* To the extent it exists at all, any such burden

is *de minimis* compared to the local benefits cited by the MTA.[3] *Doran,* 348 F.3d at 322.

---

[2] The "swap-and-stuff" refers to the procedure of swapping the out-of-state transponder
for the in-state transponder and stuffing the out-of-state transponder into a foil bag.
[3] Contrary to appellants' assertions, the FLDP also passes the *Evansville* test for
determining the validity of a levy or a toll. *See Evansville-Vanderburgh Airport Auth.
Dist. v. Delta Airlines, Inc.*, 405 U.S. 707 (1972). Under that test, "a levy is
reasonable…if it (1) is based on some fair approximation of use of the facilities, (2) is not

## B. Equal Protection Clause

In reviewing a claim under the Equal Protection Clause, we ask first whether the alleged state action burdens a fundamental constitutional right or targets a suspect class. *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 107 (3d Cir. 2008).  If it does not, the statute "does not violate equal protection so long as it bears a rational relationship to some legitimate end."  *Id.*  Appellants do not contend that the FLDP burdens a fundamental right or targets a suspect class, so the rational basis test applies here.

The MTA has proffered three legitimate goals of the FLDP—that it (1) improves traffic flow, (2) facilitates funding for highway improvements, and (3) ensures a more equitable sharing of tolls among Boston-area commuters.  Appellants contend that these goals only justify discounts to electronic system users in general, not the FLDP.  Yet again, we disagree.

First, the MTA allows all electronic system users to use the special lanes designed for Fast Lane customers—a testament to its commitment to improving traffic flow. Second, although it is true that the FLDP costs Massachusetts money, it may permit the MTA to raise tolls across all drivers while not overly burdening commuters.  Third,

---

excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Northwest Airlines, Inc. v. Co. of Kent, Mich.,* 510 U.S. 355, 369 (1994) (quoting *Evansville*, 405 U.S. at 716-17).  As the *Doran* court noted, the "tolls are assessed uniformly in direct proportion to the use of the toll facilities and have not been shown to be excessive, either standing alone or by reason of the unrestricted available of the frequent traveler discount." *Doran*, 348 F.3d at 321.  In addition, the tolls levied by the MTA and the discounts available under the FLDP are equal across all subscribers to Fast Lane, regardless of whether they are residents of Massachusetts and/or whether they are travelling in interstate commerce.  Therefore, the FLDP passes the *Evansville* test.

because all Boston-area commuters, residents and non-residents alike, have an incentive to enroll in Fast Lane, it is reasonable for the MTA to use an out-of-state toll system as a proxy for non-commuters when establishing a discount program designed to benefit only commuters. In fact, this ability to offer selective discounts to users of the Fast Lane system, and thereby target Boston-area commuters, is a sensible and legitimate reason why the MTA may have chosen to create its own electronic tolling system rather than join the states using E-ZPass. As the First Circuit Court pointed out in *Doran*, implementing a policy to benefit commuters is "surely a constitutionally valid purpose." *Doran,* 348 F.3d at 321. Thus, the FLDP does not violate appellants' rights under the Equal Protection Clause.

### C. Privileges and Immunities

Appellants' claim under the Privileges and Immunities Clause is easily rejected. That provision provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. ART. IV, § 2. "The purpose of the Clause was to foster a national union by discouraging discrimination against residents of another state on the basis of citizenship." *Salem Blue Collar Workers Ass'n v. City of Salem*, 33 F.3d 265, 267 (3d Cir. 1994), *cert. denied*, 513 U.S. 1152 (1995). Appellants allege that they have stated a claim under the Privileges and Immunities Clause because, although the FLDP does not limit enrollment to citizens of Massachusetts, it denies electronic discounts to E-ZPass users as a proxy for state citizenship. The District Court disagreed, reasoning that because the FLDP does not

discriminate against drivers based on residence, no claim can be sustained under the Privileges and Immunities Clause.

We agree with the District Court. The FLDP does not use E-ZPass as a proxy for Massachusetts citizenship to achieve discrimination despite a facially neutral program; rather, it offers all Fast Lane enrollees, regardless of citizenship, access to toll discounts on the same terms. The fact that more Massachusetts citizens than out-of-state citizens may work in the Boston area, and therefore have a greater incentive to join Fast Lane, does not demonstrate that the program is unconstitutionally discriminatory.

\* \* \* \* \*

For the reasons stated above, we affirm the judgment of the District Court.