**TOWN OF PORTSMOUTH, RHODE ISLAND, Plaintiff,**

v.

**Michael P. LEWIS in his official capacity as Director of the Rhode Island Department of Transportation, Rhode Island Department of Transportation, Daniel J. Berman in his official capacity as Division Administrator of the Federal Highway Administration, Victor Mendez in his official capacity as Administrator of the Federal Highway Administration, Federal Highway Administration, Buddy Croft in his official capacity as Executive Director of the Rhode Island Turnpike and Bridge Authority, and Rhode Island Turnpike and Bridge Authority, Defendants.**

C.A. No. 13–267L.

United States District Court, D. Rhode Island.

Signed Dec. 3, 2014.

**234**

Kevin P. Gavin, Law Office of Kevin P. Gavin, Portsmouth, RI, Thomas R. Desimone, Desimone & Desimone, Providence, RI, Terence J. Tierney, Newport, RI, for Plaintiff.

Howard A. Merten, Jeffrey H. Gladstone, Robert K. Taylor, Partridge, Snow & Hahn LLP, Michael P. Iannotti, Richard Myrus, United States Attorney's Office, Brian J. Lamoureux, Rebecca Murphy, William E. O'Gara, Pannone Lopes Devereaux & West LLC, Providence, RI, for Defendants.

### MEMORANDUM AND ORDER

RONALD R. LAGUEUX, Senior District Judge.

This matter is before the Court on Defendants' motion to dismiss the Town of Portsmouth's Complaint because it is now moot. Plaintiff Town of Portsmouth filed its Amended Verified Complaint ("the Complaint") for declaratory and injunctive relief in April 2013, seeking to enjoin Defendants' plan to impose tolls on the newly-constructed Sakonnet River Bridge. In June 2014, the Rhode Island General Assembly enacted legislation which prohibited tolling on the Sakonnet River Bridge after June 30, 2014. R.I. Gen. Laws § 24–12–40.F. Consequently, there is no longer a live controversy before the Court, and the Court holds that the matters herein are moot for the reasons explained below.

### Background

The 1956-built Sakonnet River Bridge was a toll-free span that crossed the river connecting the towns of Tiverton and Portsmouth, Rhode Island. In 1999, due to the Bridge's deteriorated condition, the State of Rhode Island's Department of Transportation ("the DOT"), along with the Federal Highway Administration, initiated a review of options to restore or replace the Bridge. As required by federal law, the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"), the DOT and the Federal Highway Administration prepared and issued a Draft Environmental Impact Statement in 2001,

which described and assessed the options, including restoration of the existing bridge, construction of a new bridge in one of three possible locations, and no course of action. A proposal for imposing tolls on the Bridge was included as a means to generate revenue for the project. A period of public comment followed, during which the public expressed significant opposition to the prospect of tolls on the Bridge. The State's governor at the time, Donald Carcieri, also opposed the toll.

In 2003, the DOT and the Federal Highway Administration issued a Final Environmental Impact Statement, which did not include a proposal for tolls. Several months later, the Federal Highway Administration issued a Record of Decision, adopting the Final Environmental Impact Statement. The Record of Decision recommended that a new bridge be built, and stated that, "The use of toll collection as a finance means has been eliminated from further consideration at the direction of the Governor of the State of Rhode Island." [ECF Doc. # 12–4, ¶ 9.0].

During the next ten years, the new Sakonnet River Bridge was designed and constructed, financed by State and federal money. The new Bridge opened officially in September 2012—with no tolls. The same year, Rhode Island's General Assembly enacted legislation that mandated the transfer of responsibility for the Bridge from the DOT to the newly-created Rhode Island Transit and Bridge Authority ("RITBA"). Because the State was confronting crises in both its finances and its transportation infrastructure, the legislation allowed RITBA to impose tolls on the Bridge in order to generate revenues to maintain highways and bridges State-wide. On January 31, 2013, the DOT issued a three-thousand-plus-page Final Environmental Impact Statement Reevaluation, which considered the impact of the con-

struction and operation on the Bridge of an "All Electronic Toll Collection" system, consisting of an arch, or gantry, over the roadway with an electric eye to read a gizmo on the windshields of passing cars—generally known as an E–Z Pass system. The Final Environmental Impact Statement Reevaluation exhaustively detailed the toll system's potential effects on the area's air and water quality, wildlife, wetlands, groundwater, ecology, transportation patterns, river navigation, noise, neighborhood cohesion, architectural resources, pedestrians, public transportation, and many other related topics.

The Federal Highway Administration then issued a Revised Record of Decision approving the DOT's Reevaluation. The Revised Record of Decision stated that, because "no new significant environmental impacts, not previously addressed in the FEIS [the 2003 Final Environmental Impact Statement], have been identified as a result of the analysis of the proposed tolling," no supplemental environmental impact statement was required by NEPA. [ECF Doc. # 12–9, p. 1]. The DOT transferred control of the Bridge to RITBA, which announced its intention to construct the electronic tolling system and to start charging tolls in July 2013. Drivers from out-of-state were to be charged $3.75 to cross the Bridge, while Rhode Island drivers with a Rhode Island E–Z Pass transponder would be charged only 75 cents for unlimited daily crossings. On April 23, 2013, this lawsuit was filed.

### *The Complaint*

In its Complaint, Plaintiff alleges that the residents and businesses of the Town of Portsmouth would suffer substantial and irreparable harm if tolls were imposed on the Bridge, thereby restricting, disrupting and violating residents'· right to travel. Further, Plaintiff alleges that tolling would have a ripple effect throughout Rhode Is-

land by increasing the cost of living and doing business in Newport County and the East Bay. In Count I of its Complaint, Plaintiff seeks an injunction against the imposition of tolls on the Sakonnet River Bridge and a declaratory judgment that the tolls would violate the 'freedom from tolls' provision of 23 U.S.C. § 301.[1]

Count II alleges that Defendants did not follow proper NEPA procedures when they proceeded to reevaluate the 2003 Record of Decision, or alternatively when they produced the January 2013 Final Environmental Impact Statement Reevaluation. Again, Plaintiff seeks an injunction against the imposition of tolls, and a declaratory judgment that the DOT and the Federal Highway Administration's administrative processes are capricious, violate NEPA, and are consequently invalid.

### The travel of the case

The parties appeared before this Court on Plaintiff's Motion for Preliminary Injunction on June 5, 2013. Following oral argument, the Court denied Plaintiff's Motion from the bench. The Court cited *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 66 F.Supp.2d 317, 326 (D.R.I. 1999), for the four findings that must be made if the Court is to grant a request for a preliminary injunction: 1) irreparable harm will result if the injunction is not granted; 2) the harm must outweigh the harm to the opposing party if the injunction is granted; 3) the plaintiff must demonstrate that its side is likely to succeed on the merits; and 4) the injunction will not be adverse to the public interest.

In its bench decision, the Court pointed out that because the Freedom from Tolls provision, 23 U.S.C. § 301, provided no private right of action, there was no likelihood that Plaintiff could prevail on Count I of its complaint.[2] *See Endsley v. City of Chicago,* 230 F.3d 276, 280 (7th Cir.2000). Moreover, this Court opined that the federal Tax Injunction Act, 28 U.S.C. § 1341, would likely serve to prevent the Court from interfering with the State of Rhode Island's efforts to impose taxes to support its governmental functions.

The Court ruled that Plaintiff had failed to show that it would suffer irreparable harm if the State began to impose tolls on the Bridge prior to a trial on the merits of its claims. On the other hand, the State stood to lose an estimated $4 million of revenue if it was unable to charge tolls during the busy tourist months of July and August. The Court noted that the State's interests reflect those of the public, as set forth by the General Assembly in the legislative findings incorporated in The East Bay Bridge System Act of 2012, R.I. Gen. Laws §§ 24–172, which stated, *inter alia:*

> (6) The State has sufficient financial resources to complete the construction of the new Sakonnet River Bridge and to demolish the existing Sakonnet River Bridge, but does not have sufficient financial resources to assure future maintenance and operation of the Sakonnet River Bridge.

Plaintiff appealed the Court's ruling to the First Circuit Court of Appeals the follow-

---

1. Section 301 provides: "Except as provided in section 129 of this title with respect to certain toll bridges and toll tunnels, all highways constructed under the provisions of this title shall be free from tolls of all kinds."

2. At the hearing, the Court did not separately analyze Plaintiff's Count II. In Count II, Plaintiff alleges that Defendants violated the procedures required by the National Environmental Policy Act, 42 U.S.C. § 4231. This statute also provides no private right of action. *See Ashley Creek Phosphate Co. v. Norton,* 420 F.3d 934, 939 (9th Cir.2005).

ing day, and hearings on other pending motions were temporarily postponed.[3]

Plaintiff filed a Motion for an Injunction pending its Appeal, which was denied by the Court on June 27, 2013, based on the same reasoning articulated from the bench on the motion for preliminary injunction. In July, Plaintiff withdrew its First Circuit appeal, with Defendants' assent. On October 16, 2013, Plaintiff's Motion to file a Second Amended Complaint came on for hearing before this Court. Plaintiff argued that it must be permitted to add a Count III to its complaint, alleging that Defendants' plan to use revenues from the Sakonnet River Bridge to help maintain highway facilities throughout the State was in violation of 23 U.S.C. § 129(a)(3), which section sets forth the permissible uses for toll revenue on federally-funded projects. The motion to add the third Count was denied by the Court for two reasons. First, as with Section 301, the statute providing for federal aid for state highway facilities, 23 U.S.C. § 129, includes no private right of action. Second, as no tolls had yet been imposed, the Court held that Plaintiff's efforts to add a claim objecting to how the toll revenue was to be spent was premature and speculative. The Court cited and read from the bench a section of Supreme Court case *Abbott Laboratories v. Gardner*, as follows:

> Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt

in a concrete way by the challenging parties.

387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (abrogated on other grounds). Plaintiff next filed a motion for partial summary judgment on Count I of its complaint, seeking a declaration that any toll on the Sakonnet River Bridge would violate 23 U.S.C. § 301, and seeking a permanent injunction against the imposition of tolls.

### *Legislative activity*

It is important at this juncture in our chronology to call the reader's attention to activities taking place outside the courtroom. During the 2013 session of the General Assembly, legislation was introduced to repeal portions of the 2012 law which authorized the transfer of authority over the Bridge from the DOT to RITBA. Another law proposed at the time would prohibit tolls on the Bridge, and establish alternative methods of funding highway maintenance. As the 2013 legislative session drew to a close in June, the General Assembly punted this political football— establishing a special legislative commission to study funding for the Sakonnet River Bridge and other state-maintained bridges, and to report its findings in January 2014. In the meantime, RITBA was authorized to impose a toll on the Bridge of no more than ten cents between August 2013 and April 2014. This toll went into effect on August 19, 2013, only for cars with an E–Z pass transponder, and was extended until June 2014.

As explained earlier in this decision, in June 2014, the Rhode Island General Assembly amended R.I. Gen. Law § 24–12–40.F to prohibit tolling on the Sakonnet River Bridge after June 30, 2014. The

---

**3.** There were two motions to intervene, one on behalf of the Towns of Bristol and Tiverton, and one on behalf of William A. Kelly, a

Portsmouth citizen. In addition, Plaintiff sought to further amend its Complaint.

same month an annual budget was passed and signed by Governor Lincoln Chafee which allocated other monies for the maintenance of the State's bridges.

### Further travel of the case

Following Plaintiff's November 2013 Motion for Partial Summary Judgment on Count I of the Complaint, the parties engaged in several months of skirmishing over discovery. In July 2014, Plaintiff filed a Motion for Restitution and Disgorgement of Tolls. This Motion seeks a court order requiring RITBA to disgorge the ten-cent tolls that were collected between August 2013 and June 2014,[4] and make restitution to Plaintiff for its legal fees and costs. Adjudication of this Motion depends upon the Court first granting Plaintiff's Motion for Summary Judgment on Count I of the Complaint. Defendants have objected to Plaintiff's motions, and have filed their own Motion to Dismiss for Mootness. In addition, the prospective intervenors, Town of Bristol and Town of Tiverton, renewed their joint motion to intervene, and moved the Court to hold a hearing thereon. These various motions came on for hearing before this Court on October 22, 2014, and are now in order for decision.

### Analysis

The issue of tolls on the Sakonnet River Bridge was fought and resolved in the political arena. Plaintiff's effort to solve the dispute through legal channels has been a side-show, although it has cost all parties involved, including the Court, significant time and resources. The Rhode Island General Assembly has resolved the issue: tolls are now forbidden by statute, R.I. Gen. Laws § 24–12–40.F. No tolls have been charged on the Bridge since June 30, 2014, and it is the Court's understanding that the electric-eye-gantry

equipment has been removed and is for sale.

This matter is settled; it is moot. Based on all appearances, Plaintiff's side was victorious, while the State has forfeited a potentially lucrative revenue stream needed to maintain its infrastructure. Nonetheless, Plaintiff continues to pursue this lawsuit, partly in order to obtain from this Court a ruling that imposing a toll on the Sakonnet River Bridge was and always will be illegal. A second, and perhaps more important, objective is to claim a portion of the dimes collected by RITBA from the motorists who crossed the Bridge during the period that tolls were charged.

### The doctrine of mootness

■ The doctrine of mootness traces its roots to Article III, Section 2, Clause 1 of the United States Constitution, which limits this Court's jurisdiction to 'cases and controversies,' requiring a live dispute whose resolution will provide meaningful relief to the prevailing party. *American Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops,* 705 F.3d 44, 52 (1st Cir.2013). "If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." *Mangual v. Rotger–Sabat,* 317 F.3d 45, 60 (1st Cir.2003). According to the Supreme Court in *County of L.A. v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), two conditions must be met in order to render a matter moot: first, there must be no reasonable expectation that the alleged violation will recur; and, second, interim relief or circumstances must have completely and irrevocably halted the effects of the alleged violation.

■ In the present case, Plaintiff, in its two-count Complaint, seeks a declaration that the imposition of tolls on the Sakonnet

---

**4.** Plaintiff estimates that approximately $1    million was collected during this period.

River Bridge violates two federal statutes. It also seeks an injunction prohibiting the State and the Federal Highway Administration from imposing the toll. Obviously, no injunction is necessary as the toll is prohibited by State statute and the toll mechanism has been dismantled. As for a declaration that the proposal to impose a toll, or the process as undertaken, was illegal: this is precisely the kind of advisory opinion that this Court is prohibiting from issuing.

> With limited exceptions, not present here, issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory. The Supreme Court has admonished that federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna,* 523 U.S. 1, 18, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

*American Civil Liberties Union,* 705 F.3d at 53 (internal citations omitted).

### *Voluntary cessation*

■■■ Plaintiff argues that its claims fit into an exception to the mootness doctrine; that is, where a defendant has voluntarily, and presumably temporarily, ceased its offending conduct—waiting for the lawsuit's termination until it may resume that conduct unhindered. *See City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 288–89, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). Plaintiff argues that Rhode Island's legislature has flip-flopped about whether or not to impose tolls and it might change its mind again. As long as the Federal Highway Administration's Record of Decision approving the electronic toll remains in effect, the General Assembly could enact new legislation, reversing R.I. Gen. Laws § 24–12–40.F and permitting the now-defeated toll to rise again from the ashes. That is a hypothetical and speculative prospect. Moreover, this scenario has been rejected by the First Circuit as not qualifying for the 'voluntary cessation' exception in *New England Reg. Council of Carpenters v. Kinton,* 284 F.3d 9, 18 (1st Cir.2002), which holds that there must be "a reasonable expectation that the challenged conduct will be repeated following dismissal of the case."

The Rhode Island General Assembly is not a manipulative litigant, enacting legislation in order to avoid this Court's review. The General Assembly responded to an outpouring of political and public pressure opposed to the toll, a force that no doubt would be unleashed again if tolls were reconsidered. The Court holds that there is no reasonable expectation that RITBA will attempt to impose tolls on the Bridge when this litigation is terminated. Consequently, the voluntary cessation exception to the mootness doctrine does not apply to this case.

### *Plaintiff's disgorgement motion*

Plaintiff argues that its recent motion for equitable restitution and disgorgement of the collected tolls represents a live controversy, and that, consequently, this matter is not moot. Plaintiff has noted that this Court's consideration of its motion for restitution and disgorgement may only follow a favorable ruling on its Motion for Partial Summary Judgment on Count I of its Complaint. However, this Court holds that both Count I and Count II of the Complaint are moot, as is Plaintiff's Motion for Partial Summary Judgment. Plaintiff cannot create a live controversy by belatedly making a motion demanding that it is equitably entitled to receive monies from the allegedly illegal tolls collected from motorists in 2013 and 2014.

In addition to requesting that a *pro rata* portion of the collected tolls be returned to the motorists who paid them, Plaintiff also

seeks attorneys' fees in the form of 33 1/3% of the so-called common fund created by the allegedly illegal collection of tolls. This award would also require a preceding favorable ruling from this Court on the underlying legality of the tolls under 23 U.S.C. § 301. Because the Court has not and will not rule on Plaintiff's challenge to the legality of the tolls, Plaintiff's Motion for Disgorgement and Restitution is not ripe for adjudication and is dismissed.

### Conclusion

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss for Mootness. Plaintiffs' Amended Verified Complaint is hereby dismissed, as are all outstanding motions pending in this litigation. Judgment shall enter for all Defendants. It is so ordered.