Putnam J.
delivered the opinion of the Court.* The plaintiffs claim an easement over the land of the defendant It is admitted that he owns the fee. The plaintiffs contend that they have acquired a right to use the defendant’s land as a receiving basin, into which the water retained in their full basin may flow, for the purpose of working the various mills which they have built and may erect ; and that such a right has been acquired in virtue of the grant of the legislature of this Commonwealth, to establish the Boston and Roxbury Mill Corporation. They contend that the “ public exigences require ” that the property of the defendant, as well as of divers other owners of flats ground constituting the receiving basin, should be appropriated to enable the corporation to carry their enterprise into effect, which enterprise they say was of public benefit; that the appropriation is within the provision of the 10th article of the Bill of Rights, an appropriation “ to public uses,” and that a reasonable compensation was provided for the owners of the flats ground in and by the act of incorporation.
Those positions are denied by the defendant. He contends that the enterprise of the plaintiffs was and is of a private character, and that the legislature had no authority to take or subject the land of the defendant to any incumbrance or service for the benefit of the plaintiffs ; and further, that if it were of a public character within the meaning of the constitution, no reasonable compensation has been provided for the damage sustained by the defendant.
Let us examine these pretensions. And first, was the enterprise of the plaintiffs so far of a public nature as to come within the meaning of the constitution, and to require the appropriation of the property of the defendant to carry the undertaking of the plaintiffs into effect ?
The design was to construct a dam or dams, for the purpose of obtaining a head and fall of the waters of a navigable arm of the sea', whereby to work grist-mills, iron manufacto *481 ríes, and other mills for other useful purposes, and also to make an avenue or highway over the dams, for the accommodation of all persons, cattle, horses and carriages, for a fixed rate of toll.
To effect these objects, the right to obstruct the navigable water or arm of the sea, by the dams, and the right to pen up the tide water in a full basin, and so to raise a head of water, must be obtained. And the right to exclude the tide waters from the empty basin, into which the waters of the full basin should run, must also be obtained. The receiving basin would be empty at low water, and the gates shut against the sea ; the pond would be filled by the flow of the tide, and kept in by the gates ; and thus a perpetual mill power of great extent would be acquired. Connected with these water powers, the dam, or avenue from Beacon Street to Sewall’s point in Brookline, made a prominent subject in the consideration of the enterprise and fixing its character, viz. whether it should be considered as one merely of a private nature, or as one involving great objects of public utility.
The owners of the upland owned the flats ground to the extent of one hundred rods. The Commonwealth had the title to the flats beyond. So far as it regarded the right of the public, it is not contended but that the corporation acquired it by the act of the legislature. But the flats between the upland and those belonging to the Commonwealth, must be subjected to the control of the corporation, or they could not carry their undertaking into effect.
Here was a creation of an immense perpetual mill power, as well as a safe and commodious avenue, in and over the waste waters of the ocean and adjoining to a great city.
We should be at a loss to imagine any undertaking of an individual or association of persons with a view to private emolument, in which the public had a more certain and direct interest and benefit.
It was conceded in the able argument for the defendant, that the toll bridge or avenue might be sustained, so far as it affected the property of individuals, upon the same principles that are applicable to turnpike roads, where the lands of individuals are taken by the road proprietors, (with a view indeed *482 to the tolls,) because there is a right in the public to pass on the avenue, paying toll, as on a highway. But it is said that the analogy fails, when applied to laying bare the flats, in order to get the water power for mills, because the public have no right in respect to the manufactories, as they have to travel upon the turnpike roads. But the public may be well said to be paid or compensated in the one, as well as in the other case ; and are benefited by the one improvement as well as by the other. Take the grist-mill established in this city, as an example. Is it of no benefit to have the corn ground near to the inhabitants, rather than at a distance ? “ But you cannot compel the miller to grind your corn for the toll, as you may the proprietors of the turnpike to let you travel over thu road for a toll.” If there be not an actual, there is a mor?> necessity imposed upon the owner of the mill, to accommo date the public to the extent of his power. Who ever heard of a refusal ? And in regard to the manufacturing establishments, is it nothing to the public that great numbers of citizens have the means of employment brought to their homes ? And are not the proprietors obliged to give employment. ? They cannot carry their works on without labor, and who that is disposed to industry and to that kind of employment, is prevent ed from its exercise ? This becomes a matter of interest, which will certainly direct and govern the parties. And it is among the most pleasant considerations attending this branch of the subject, that the interest or benefit arising from manufacturing establishments is distributed quite as much, and oftentimes more, among the laborers and operatives, than among the proprietors of the works.
But it is no sure test of the public exigency, that the land owner shall have a certain right to use the thing thus brought into operation. Take an aqueduct, for example, brought by the enterprise and capital of individuals through lands of others for the use of a city, paying all the damages for the taking of the waters at the spring, and for the digging up of the soil of strangers in order to conduct it. Those strangers have no right to the water thus brought into the city, unless the proprietors of the aqueduct shall permit it. And can it be questioned that the legislature might subject the lands of individuals *483 to the control of the associated proprietors, to obtain such a public benefit ? Who could say that the public exigencies did not require individuals to grant the necessary privileges, for a proper compensation, to carry such a work into effect ? It would be for the interest of the proprietors to furnish the water at a reasonable price.
The plaintiffs are an authorized association to procure water power to drive mills of various kinds by tide waters. How does it differ in principle from the effecting of such an intent by fresh water, and thereby subjecting the lands of others to the service of the mill owner ? For more than a century the mill owner has had the right to raise a head or pond of water by flowing the lands of others, paying the damage. In many such cases valuable meadows have been inundated, and thus private property has been taken, without the consent of the owners, excepting only as they may be supposed to have consented to the laws made by the legislature. But for those mill acts, as they are called, the mill owner would have been liable for the damages at common law, or the owner of the land might have removed the dam as a private nuisance. But under and in virtue of those acts, the dam is protected ; it is no longer removable as a nuisance ; and the owner of the land is thereby deprived of the entire dominion of his soil, because the public good required the sacrifice at his hands, for a reasonable price.
The old statutes speak of mills as greatly beneficial to the-public. The preamble of Prov. St. 8 Anne, c. 1, an act for the upholding and regulating of mills, recites that they sometimes fall into despair and are rendered useless and unserviceable, if not totally demolished, to the hurt and detriment of the public, as well as the loss to the partners who are ready to rebuild, &c. So the Prov. St. 12 »2nne, c. 8, speaks of “ mills serviceable to the public good and the benefit of the town ” ; and gives to the mill owners liberty to continue and improve the pond for their best advantage, without molestation, paying damages for raising the water, &c. The Prov. St. 1 Geo. 2, c. 4, gave treble damages for the trespass of taking up, breaking down or damnifying any dam made use of *484 for the inclosing of water improved for the benefit of any mill, &c.
These acts were revised by the St. 1795, c. 74, which provides that the mill owner may flow any lands not belonging to him, (not merely a small quantity, as in the Si. 12 Anne,) which shall be found necessary to raise a suitable head of water to work his mill, paying damages, &c. The jury however are to determine how far the public convenience and the circumstances of the case do justify such flowing.
The St. 1824, c. 153, provides for the recovery of damages sustained by the owner of the land either above or below "the mill. And the St. 1825, c. 109, gives the mill owner a right of tendering the amount of the damages ; thus putting trespass and contract upon the same footing ; and it further limits the claim to two years before the process, &c.
Now we have nothing to do with the expediency of those various mill acts, but it is certainly apparent, that the legislature have considered it for the public good to encourage the erection of mills, and have subjected the property of the citi zens to the control of the mill owners, they paying the damage. In these cases the damage has been sustained by reason of the flowing of the lands. But in the case at bar, the damage is in laying bare the flats of the tide water, so as to make a fall for the water in the pond or full basin. But we do not perceive that there is any difference in the principles applicable to the two cases. The object in each is to get a head and fall, for mill purposes. In one case, having a fall, you flow meadows and upland to get a head ; in the other, having a head, you empty or lay bare the flats to make a fall. In each case a head and fall are obtained for the water power. In each case the mill owner operates on the lands of other persons, and the damage, it should seem, cannot be greater where the land is made bare, than where it is overflowed. The soil in each case is in the owner, and he may use it in any way which is not inconsistent with the rights granted to the mill owner. But he may do nothing more ; for we cannot accede to the position of the learned counsel for the defendant, that he has a right to fill up his flats ground, and so to dimmish the reservoir. The fallacy, we think, consists in *485 taxing it for granted, that the legislature had no authority o make the grant to the corporation, and to subject the lands of the defendant to the service claimed. If it were not necessary thus to affect the property of the defendant for public uses, the argument would be sound ; but if the public exigencies required the appropriation of the defendant’s property to the extent defined in the grant to the corporation, they being accountable in damages, then it would seem clearly to follow, that the defendant cannot lawfully do any act or thing which shall counteract the grant. It should be, so far as regards these parties, just as if the defendant had, for a consideration paid, granted to the plaintiffs the right which they now claim under the legislative grant. To recur again to the example of the aqueduct; — would it be lawful for one through whose lands it has been conducted by the authority of the legislature, and who has been paid his damages, would it be lawful for him to cut off the pipes, under the claim'to dig upon his own land to any depth he pleased ?
The principle is, that the lands of individuals are holden subject to the requisitions of the public exigencies, a reasonable compensation being paid for the damage. It is not taking the property of one man and giving it to another. At most, it is a forced sale, to satisfy the pressing want of the public. Now this is as it should be. The will or caprice of an individual would often defeat the most useful and extensive enterprises, if it were otherwise. Property is nevertheless sufficiently guarded by the constitution. The individual is protected in its enjoyment, saving only when the public want it, not merely for ornamental, but for some necessary and useful purposes. Then indeed the owner must part with it for an equivalent.
It was argued for the defendant, that here was no jury to ascertain the extent to which the plaintiffs might flow, or lay bare the flats. And it seems to us that a jury was altogether unnecessary, because the legislature for themselves, being upon the spot, upon a full view and consideration of the matter, determined and ascertained the extent, as well as the public exigency of the grant.
It has been argued, that the legislature expected the plain *486 tiffs would obtain the consent of the owners of the flats ground If that were so, and the expectation were not realized, it would become necessary that the legislative power should enable the plaintiffs to effect their enterprise. And besides, by providing for damages which might be sustained, the legislature must have contemplated the case which might happen, of a dissent of some persons whose property might be injured.
The contracts which were made between the petitioners and the town of Boston, were ratified by the legislature, as if they had been made by the corporation and the town. But the defendant did not come into any contract with the petitioners or the corporation, affecting his own private property. He is not to be affected by those contracts, in any way advantageously or injuriously ; but he stands upon his own rights as regulated by the law.
It was said, that it was not necessary that the plaintiffs should have the whole of the flats, to give effect to the legislative grant; though it seemed to be admitted that the whole was necessary for the completion of the plaintiffs’ enterprise. But the grant seems to us to embrace the whole which the plaintiffs claim. They were authorized “ effectually to exclude the tide water, and to form a reservoir or empty basin of the space between the dam from [Charles Street] and Boston Neck.” The defendant’s land is between those termini.
We are clearly of opinion, that the grant to the Boston and Roxbury Mill Corporation was well warranted by the public exigencies, and that the undertaking, although commenced with a view to the private advantage of the stockholders, promised to be of immense and certain utility to the State. That anticipation has been fully realized, so far as it related to the public. We regret that it did not prove beneficial to the enterprising projectors.
But it is contended, that there was no reasonable compen sation provided for the injury which the defendant has sustained.
Let us examine the act in that respect. By the sixth section it is provided, that any person or corporation sustaining any damage by the building of the dams, &c. “ or from the exercise of any of the rights and powers given to the corpo *487 ration,” may have the same ascertained, (if there be any,) in the first place by a committee to be appointed by the Court of Common Pleas, and if their report should not be satisfactory, then may have the same tried and determined by a The committee are to inquire, “ whether any damage has been sustained from the causes aforesaid, and if any, they shall estimate the same, and where the damage is annual they, shall so declare the same in their report.”
It is said by the counsel for the defendant, that this provision was wholly inadequate ; that the defendant was benefited by having his land relieved from the tide water; that there was no present damage, and no provision for damage which should thereafter arise. And it was said further, that the corporation had done no act in taking the defendant’s land, so as to enable him to make any claim for damages.
These suggestions are more ingenious than sound. The depriving one of the beneficial use of his lands, is, in the sense of the law, a taking of his lands. It would be very clear in the case of flowing. But the principle is the same, in laying bare the lands. In each case, the" absolute, unqualified use of the soil is taken away. The owner cannot (as we have seen) counteract the effect of the grant, by filling up his land, in the one case, any more than in the other. He has the fee remaining in him, subject only to the right of the mill owner to flow, or to lay bare the land, in order to obtain the water power for mill purposes. When therefore the plaintiffs had built their dams, and excluded the water from the defendant’s flats, for an empty basin, there was in one sense a taking of the defendant’s, land. He thenceforward might claim any damage which he sustained from the diminished right to use his land as he pleased. Before the legislative grant, the defendant might have filled up his flats ground to a certain extent, not interfering with the rights of others. After the grant, he could not lawfully do it. He was deprived of the complete dominion and use which he enjoyed before. If he sustained any damage from that interference with his land, it accrued presently. If it were waste property, and no real injury was sustained, that might well operate with a reasonable man to prevent any claim for damage. The corporation then assert *488 ed their right to lay bare the defendant’s flats forever. They took the defendant’s land for their mill operations, as effectually as the mill owner upon a fresh water stream takes the land above by flowing. The mill owner, in each case, claims an easement in the soil of another. To that extent the owner of the land may claim damage, and a present damage, for any mjury or diminution in the value of his estate, which may be redressed in the mode pointed out in the act of the legislature. These views of the case have led us to a clear opinion, that the judgment should be for the plaintiffs, with damages (by consent in such event) at one dollar and full costs of suit.[1]

 See Boston Water Power Co. v. Boston and Worcester Railroad Corp 16 Pick. 212, and 23 Pick. 360.