# United States Court of Appeals
## For the First Circuit

No. 19-1316

AMERICAN TRUCKING ASSOCIATIONS, INC.; CUMBERLAND FARMS, INC.;
M&M TRANSPORT SERVICES, INC.; NEW ENGLAND MOTOR FREIGHT, INC.,

Plaintiffs, Appellants,

v.

PETER ALVITI, JR., in his official capacity as Director of the
Rhode Island Department of Transportation; RHODE ISLAND TURNPIKE
AND BRIDGE AUTHORITY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Charles A. Rothfeld, with whom Evan M. Tager, Colleen M.
Campbell, Mayer Brown LLP, Richard Pianka, and American Trucking
Associations Litigation Center, were on brief, for appellants.
Michael W. Field, Assistant Attorney General, Deputy Chief,
Civil Division, Rhode Island Office of Attorney General, with whom
Peter F. Neronha, Attorney General, was on joint brief, for
appellee Alviti, Jr.
John A. Tarantino, with whom Patricia K. Rocha, R. Bart
Totten, Nicole J. Benjamin, and Adler Pollock & Sheehan were on
joint brief, for appellee Rhode Island Turnpike and Bridge
Authority.

December 5, 2019

**KAYATTA**, **Circuit Judge**.  This appeal poses the question whether bridge and highway tolls authorized by a Rhode Island statute are taxes within the meaning of the Tax Injunction Act ("TIA").  The state statute in question authorizes the Rhode Island Department of Transportation ("RIDOT") to collect from tractor-trailers certain "tolls for the privilege of traveling on Rhode Island bridges" in order to pay "for replacement, reconstruction, maintenance, and operation" of the bridges.  R.I. Gen. Laws § 42-13.1-4(a).  The plaintiff trucking entities filed this lawsuit asking the United States District Court for the District of Rhode Island to enjoin the collection of those tolls as violative of the Commerce Clause of the United States Constitution.  The district court dismissed the lawsuit for want of jurisdiction under the TIA, which states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  For the following reasons, we find the TIA's prohibition inapplicable to the Rhode Island tolls, and reverse.

## I.

In 2016, the Rhode Island General Assembly passed the Rhode Island Bridge Replacement, Reconstruction, and Maintenance Fund Act ("RhodeWorks").  See R.I. Gen. Laws §§ 42-13.1-1 to -9.  The General Assembly found that 23% of large Rhode Island bridges

were "structurally deficient" and that current funding sources were insufficient to cover the cost of maintenance. Id. § 42-13.1-2(2), (7). It also found that large commercial trucks cause over 70% of the damage to Rhode Island roads and bridges but contribute less than 20% of the revenue to fund transportation infrastructure under existing sources. Id. § 42-13.1-2(8). To eliminate that funding disparity, the General Assembly authorized RIDOT to collect tolls exclusively from large commercial trucks. Id. §§ 42-13.1-4(a), -5.

RhodeWorks imposes a daily limit on such tolls of $40 per truck and a $20 limit on border-to-border trips along Interstate 95. Id. § 42-13.1-4(c), (d). Within those limits, RIDOT determines both the locations of toll collection and the amounts of the tolls. Id. §§ 42-13.1-7 to -8. Under RIDOT's authority, the Rhode Island Turnpike and Bridge Authority ("RITBA") collects the tolls and deposits the revenue into a special account. Id. §§ 42-13.1-3(9), -9. This account, called the "Rhode Island bridge replacement, reconstruction, and maintenance fund," can be used only "to pay the costs associated with the operation and maintenance of the toll facilit[ies]" and to fund the "replacement, reconstruction, maintenance, and operation of Rhode Island bridges." Id. §§ 42-13.1-6(a), -9. "Unexpended balances and any earnings thereon shall not revert to the general fund . . . ." Id. § 42-13.1-6(c).

- 4 -

American Trucking Associations, Inc., Cumberland Farms, Inc., M&M Transport Services, Inc., and New England Motor Freight, Inc. brought this suit against Peter Alviti, Jr. in his official capacity as Director of RIDOT, and RITBA intervened as a defendant. We refer to plaintiffs collectively as "American Trucking," and to defendants as "Rhode Island." American Trucking challenged RhodeWorks as unconstitutionally discriminatory against out-of-state entities under the dormant Commerce Clause. Am. Trucking Ass'ns v. Alviti, 377 F. Supp. 3d 125, 127 (D.R.I. 2019). Rhode Island moved to dismiss on three grounds: (1) the district court lacked subject matter jurisdiction under the TIA; (2) principles of comity and federalism required the district court to decline subject matter jurisdiction; and (3) the Eleventh Amendment barred the suit. Id. Finding it to be a "close call," the district court dismissed the suit pursuant to the TIA and did not address the other grounds for dismissal. Id. at 128, 133.

American Trucking timely appealed. The parties agree that Rhode Island state courts provide a "plain, speedy and efficient remedy" within the meaning of the TIA. The only dispute is whether the RhodeWorks tolls are a "tax." We review de novo. See Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

- 5 -

We begin with the text of the TIA, asking whether the word "tax" includes tolls, or more precisely the tolls at issue here. The TIA contains no definition of the word "tax," so we look to the word's "ordinary . . . meaning . . . at the time Congress enacted the statute." New Prime Inc. v. Oliveira, 139 S. Ct. 532, 539 (2019) (omissions in original) (quoting Wis. Cent. Ltd. v. United States, 138 S. Ct. 2067, 2074 (2018)).

Congress enacted the TIA in 1937. Pub. L. No. 75-332, 50 Stat. 738 (1937). When we look at whether the word "tax" was then understood to include tolls, we find something of a mixed bag, albeit one quite heavily loaded in favor of treating tolls as something other than taxes. We are aware of five pre-1937 opinions in which courts used the word "tax" to describe what otherwise might have seemed like tolls, or in some other way conflated tolls and taxes.[1] In none of these cases was the question whether a toll

---

[1] See Cont'l Baking Co. v. Woodring, 286 U.S. 352, 360–61 (1932) (addressing a "tax of 'five-tenths mill per gross ton mile'" on carrier vehicles "for the maintenance and reconstruction of the public highways"); Interstate Busses Corp. v. Blodgett, 276 U.S. 245, 249 (1928) (addressing "a tax of one cent for each mile of highway traversed by any motor vehicle"); Geiger v. President, Etc., of Perkiomen & Reading Tpk. Rd., 31 A. 918, 919 (Pa. 1895) ("The taking of tolls, it has been held, is only another method of taxing the public . . . ."); City of St. Louis v. Green, 7 Mo. App. 468, 473 (1879) ("Every burden imposed for revenue purposes is levied under the taxing power . . . . [T]olls . . . are . . . special cases of taxes . . . ."), rev'd on other grounds, 70 Mo.

is a tax directly at issue. In fact, the word "toll" does not even appear in the only two federal opinions among those five cases. Rather, the Supreme Court in each of those cases simply used the term "tax" as used by the pertinent state legislature. Nevertheless, Rhode Island relies on these cases as demonstrating that calling toll-like charges "taxes" was hardly unknown.

On the other hand, we are aware of at least six pre-1937 cases in which the issue before the court was whether a toll is a tax, and in all six of those cases the court held that a toll is not a tax.[2] Most significantly, those cases include a Supreme Court decision squarely holding that river tolls are not taxes for purposes of a due process challenge.[3] See Sands v. Manistee River

---

562 (1879); People ex rel. Griffin v. Mayor of Brooklyn, 4 N.Y. 419, 431 (1851) ("Tolls are delegated taxation . . . .").

[2] See Sands v. Manistee River Improvement Co., 123 U.S. 288, 294 (1887); Masters v. Duval Cty., 154 So. 172, 174 (Fla. 1934) ("Tolls are not taxes." (citing Sands, 123 U.S. 288)); Bloxton v. State Highway Comm'n, 8 S.W.2d 392, 395 (Ky. 1928) ("Tolls are not taxes . . . ."); Ala. State Bridge Corp. v. Smith, 116 So. 695, 698 (Ala. 1928) ("The fixation and collection of tolls is not the levy or collection of taxes . . . ."); Ruler v. York Cty., 139 A. 136, 139 (Pa. 1927) ("Tolls on highways are not taxes." (citing Sands, 123 U.S. 288)); In re Opinions of the Justices, 120 A. 629, 630 (N.H. 1923) ("There is no analogy between the imposition of taxes and the levying of tolls . . . ." (quoting Sands, 123 U.S. at 294)); see also People ex rel. Curren v. Schommer, 63 N.E.2d 744, 747 (Ill. 1945) ("There appears to be a clear cut and definite distinction between the legal conception of tolls and taxes." (citing Sands, 123 U.S. 288)); State ex rel. Wash. Toll Bridge Auth. v. Yelle, 82 P.2d 120, 125 (Wash. 1938) ("A toll is not a tax . . . .").

[3] In a separate holding, the Court found that tolls are not taxes for purposes of a 1787 ordinance prohibiting "any tax,

- 7 -

Improvement Co., 123 U.S. 288, 294 (1887) (Field, J.). Sands

flatly states:

> There is no analogy between the imposition of taxes and the levying of tolls for improvements of highways; and any attempt to justify or condemn proceedings in the one case, by reference to those in the other, must be misleading. Taxes are levied for the support of government, and their amount is regulated by its necessities. Tolls are the compensation for the use of another's property, or of improvements made by him; and their amount is determined by the cost of the property, or of the improvements, and considerations of the return which such values or expenditures should yield.

Id.; see also id. at 297 ("By the terms tax, impost, and duty . . .

is meant a charge for the use of the government, not compensation

for improvements."  (quoting Huse v. Glover, 119 U.S. 543, 549

(1886))).

In deciding whether the ordinary meaning of "tax"

included tolls in 1937, we also have the substantial benefit of

Thomas Cooley's treatise, The Law of Taxation.  The Supreme Court

in 1898 described Cooley as a "text writer[] of high authority."

Parsons v. District of Columbia, 170 U.S. 45, 55 (1898); accord

Hill v. Kemp, 478 F.3d 1236, 1244 n.7 (10th Cir. 2007) (Gorsuch,

J.) (quoting Parsons, 170 U.S. at 55).  Over eighty years later,

the Court cited his treatise as shedding light on Congress's

_____

impost, or duty" on waterways in the territory of Michigan. Sands,
123 U.S. at 295–97.

- 8 -

understanding of a tax rule when it enacted the TIA.  Rosewell v.

LaSalle Nat'l Bank, 450 U.S. 503, 523-24 (1981) (citing 3 Thomas

M. Cooley, The Law of Taxation § 1308 (Clark A. Nichols ed., 4th

ed. 1924)).  The edition of Cooley's treatise extant in 1937 when

the TIA was enacted stated:

> A "toll" is a "sum of money for the use of
> something, generally applied to the
> consideration which is paid for the use of a
> road, bridge or the like, of a public nature."
> The term "toll," in its application to the
> law of taxation, is nearly obsolete.  It was
> formerly applied to duties on imports and
> exports; but tolls, as now understood, are
> applied most exclusively to charges for
> permission to pass over a bridge, road or
> ferry owned by the person imposing them.
> Tolls are not taxes.  A tax is a demand of
> sovereignty; a toll is a demand of
> proprietorship.

1 Cooley, supra, § 14 (footnotes omitted) (quoting City of Madera

v. Black, 184 P. 397, 400 (Cal. 1919)); see also id. § 36 ("[T]olls

for the use of passage over improved waterways are not taxes."

(citing Sands, 123 U.S. 288)).  A leading legal dictionary at that

time also gave a definition of "toll" entirely consistent with

Cooley's treatise.  Toll, Black's Law Dictionary (3d ed. 1933) ("A

sum of money for the use of something . . . ."  (citing Sands, 123

U.S. 288; City of Madera, 184 P. at 400)).

In summary, prior to 1937 every court that had been

called upon to decide whether a toll is a tax held that it is not,

and the principal -- likely only -- legal reference book in which

any member of Congress might have found guidance expressly confirmed that "tax" was not the word to use if tolls were intended to be included.

Every court that has directly spoken to whether tolls are taxes since Sands has said that they are not. See cases cited supra note 2. American Trucking also notes that many recent cases have made the same tax-toll distinction. See, e.g., Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc., 651 F.3d 722, 730 (7th Cir. 2011) (en banc) (Posner, J.) (observing in dicta that "bona fide user fees (a toll for crossing a bridge, for example) are not 'taxes' in either lay or legal lingo").[4]

Rhode Island raises two objections to our following suit and reading "tax" as used in the TIA to exclude tolls.

---

[4] See also Am. Trucking Ass'ns v. Scheiner, 483 U.S. 266, 289 (1987); Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc., 405 U.S. 707, 716–17 (1972), superseded by statute on other grounds, as recognized in Nw. Airlines, Inc. v. Cty. of Kent, 510 U.S. 355, 367–68 (1994); Corr v. Metro. Wash. Airports Auth., 740 F.3d 295, 301 (4th Cir. 2014); Yerger v. Mass. Tpk. Auth., 395 F. App'x 878, 884 n.3 (3d Cir. 2010); Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 98 (2d Cir. 2009); Doran v. Mass. Tpk. Auth., 348 F.3d 315, 320 (1st Cir. 2003); Wallach v. Brezenoff, 930 F.2d 1070, 1072 (3d Cir. 1991); Kerpen v. Metro. Wash. Airports Auth., 260 F. Supp. 3d 567, 574 (E.D. Va. 2017); AAA Ne. v. Port Auth. of N.Y. & N.J., 221 F. Supp. 3d 374, 382 (S.D.N.Y. 2016); Klein v. Flanery, 439 S.W.3d 107, 114 n.6 (Ky. 2014); Elizabeth River Crossings OpCo, LLC v. Meeks, 749 S.E.2d 176, 183 (Va. 2013); Murphy v. Mass. Tpk. Auth., 971 N.E.2d 231, 239 (Mass. 2012); Kessler v. Hevesi, 846 N.Y.S.2d 56, 57 (N.Y. App. Div. 2007); Endsley v. City of Chicago, 745 N.E.2d 708, 715 (Ill. App. Ct. 2001).

Rhode Island first points out that the relevant language in the TIA traces its provenance to the 1867 Anti-Injunction Act (AIA), 26 U.S.C. § 7421. See Direct Mktg. Ass'n v. Brohl, 135 S. Ct. 1124, 1129 (2015); Hibbs v. Winn, 542 U.S. 88, 102 (2004). Hence, argues Rhode Island, the term "tax" must carry the meaning it had in 1867, rendering Sands, et al. irrelevant. But this argument depends on there being some pre-1937 authority interpreting "tax" under the AIA to include tolls, or at least a fairly clear indication that "tax" in 1867 was understood to include tolls. And Rhode Island cites no cases construing the word "tax" in the AIA in a manner helpful to its argument, and only a single state court opinion prior to 1867 equating taxes and tolls, and even then only in a case in which the correctness of the equation was not at issue. See People ex rel. Griffin v. Mayor of Brooklyn, 4 N.Y. 419, 431 (1851). This provides too thin a reed for establishing that Congress in 1937 understood the word "tax" to accord with that single 1851 usage rather than the more contemporaneous and prevailing usage recognized in Sands and Cooley's treatise.

Rhode Island's second argument provides a bit more force. Rhode Island points out that the tolls in Sands were for the use of privately owned facilities and improvements. See Sands, 123 U.S. at 289. While the government authorized the tolls, they

were for the benefit of a private proprietor.  Id. at 289-90.[5] Hence, argues Rhode Island, Cooley differentiates a tax as a "demand of sovereignty" from a toll as a "demand of [private] proprietorship."  See also Case of the State Freight Tax, 82 U.S. (15 Wall.) 232, 278 (1872) ("Tolls and freights are a compensation for services rendered, or facilities furnished to a passenger or transporter.  These are not rendered or furnished by the State.  A tax is a demand of sovereignty; a toll is a demand of proprietorship."), abrogated on other grounds by Phila. & S. Mail S.S. Co. v. Pennsylvania, 122 U.S. 326 (1887), as recognized in Okla. Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 181 n.4 (1995).

The force of this argument drops considerably when we ask whether pre-TIA case law concerning tolls provides any support for the private-versus-public distinction Rhode Island asks us to

---

[5] See also Cty. Comm'rs v. Chandler, 96 U.S. 205, 207-08 (1877) (considering a challenge to a county bond for a private bridge); State ex rel. Allison v. Hannibal & R.C. Gravel-Rd. Co., 39 S.W. 910, 911-12 (Mo. 1897) (considering a challenge to a private toll road as exceeding the owner's corporate charter); Fuller v. Dame, 35 Mass. (18 Pick.) 472, 482-83 (1836) ("[A] turnpike road . . . is constructed in the first instance at the expense of a private company of adventurers, under the sanction of the legislature, . . . and they are to be reimbursed by a toll . . . ."); Bos. & Roxbury Mill Dam Corp. v. Newman, 29 Mass. (12 Pick.) 467, 475-76 (1832) (considering a challenge to the construction of a dam with a toll road over it by a private company).  But see Chandler, 96 U.S. at 209 ("[P]ublic bridges [include] those which belong to the public, as State, county, or township bridges, over which all people have a right to pass, without or with paying a toll . . . .").

read into the TIA.  Rhode Island stresses that when one court drew a distinction in 1897 between public roads and private turnpikes, it explained that "[a]n ordinary public road is maintained and repaired by taxes[, whereas a] turnpike is supported and maintained by the tolls exacted."  State ex rel. Allison v. Hannibal & R.C. Gravel-Rd. Co., 39 S.W. 910, 912 (Mo. 1897).  That is undoubtedly true.  When no tolls are charged, the road is very often built and maintained with money from a government's general coffers, which are replenished with taxes.

Here, though, we have the collection of what is otherwise a toll-like charge for the use of bridges owned by the state.  So the precise issue before us is whether tolls charged by the state on a state-owned bridge are taxes under the TIA even if Sands's holding as to state-authorized tolls for passage on private facilities otherwise applies to the TIA.  On this question, we find that, in several opinions decided between Sands and enactment of the TIA, state courts directly applied and followed Sands in cases involving tolls on publicly owned bridges.[6]  More damningly, the Supreme Court, in an opinion authored by Justice Field one

---

[6]  See Masters, 154 So. at 174 (county-owned toll bridge); Ruler, 139 A. at 139 (same); In re Opinions of the Justices, 120 A. at 630 ("[W]hat the state may do indirectly through such [private] agencies it may do directly -- that is, it may itself lay out and construct such improved public roads, and charge reasonable tolls to all persons using the same." (quoting Kane v. Titus, 80 A. 453, 454 (N.J. 1911))); see also Curren, 63 N.E.2d at 747 (state-owned toll highway).

- 13 -

year prior to his opinion in Sands, addressed a challenge to tolls on Illinois-owned river locks, and nevertheless determined that "[t]he exaction of tolls for passage through the locks is as compensation for the use of artificial facilities constructed, not as an impost upon the navigation of the stream. . . . For outlays caused by such works the state may exact reasonable tolls." Huse, 119 U.S. at 544, 548.

The conceptual case for the distinction Rhode Island would have us draw without benefit of authority also lacks the clear and obvious application Rhode Island supposes. In several areas of the law, governments can be seen to act in a proprietary manner. See, e.g., 28 U.S.C. § 1605(a)(2) (commercial-activity exception to the Foreign Sovereign Immunities Act); Merlini v. Canada, 926 F.3d 21, 27-28 (1st Cir. 2019) (applying section 1605(a)(2)); Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 327 (1st Cir. 2012) (market-participant exception to the dormant Commerce Clause); Doran v. Mass. Tpk. Auth., 348 F.3d 315, 318 n.2 (1st Cir. 2003) (same). Importantly, too, there is no reason to suspect that Cooley was unaware that some tolls were charged for the use of publicly owned bridges or ways. Indeed, his treatise cites Huse for the proposition that "[c]harges for services rendered . . . are in no sense taxes." 1 Cooley, supra, § 36 & n.8. Yet he saw no need to qualify the clear distinction he drew between taxes and tolls as limited to private tolls. So

- 14 -

the treatise is fairly read as rebutting any contention that common usage drew such a limitation.  And we can confidently say that no reader of the treatise, including Congress, would have most likely gleaned the supposed private-public toll distinction upon which Rhode Island tries to rely.

**B.**

With the statute's text thus weighing heavily, if perhaps not dispositively, in favor of finding that Congress in 1937 did not understand "tax" to include tolls, we turn to Rhode Island's purposive argument.  A principal purpose of the TIA was "to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances."  Hibbs, 542 U.S. at 104 (citing S. Rep. No. 75-1035, at 1-2 (1937)); see also Arkansas v. Farm Credit Servs. of Cent. Ark., 520 U.S. 821, 832 (1997) ("The [TIA] is grounded in the need of States to administer their fiscal affairs without undue interference from federal courts.").[7]  The tolls at issue in this

---

[7]  Rhode Island also points to a secondary purpose of the TIA, which is that in some cases "federal constitutional issues are likely to turn on questions of state law, which . . . are more properly heard in state courts."  Rosewell, 450 U.S. at 527 (quoting Perez v. Ledesma, 401 U.S. 82, 128 n.17 (1971) (Brennan, J., concurring in part and dissenting in part)).  This applies here, Rhode Island argues, because the district court might have to contend with executive privilege and legislative speech privileges under the Rhode Island Constitution.  We are not persuaded.  Questions of state law arise in all sorts of lawsuits, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), but that does not necessarily divest federal courts of jurisdiction.  We

- 15 -

case equal roughly $45 to 50 million each year, large enough, says Rhode Island, to render an injunction a material disruption of the state's finances, hence the TIA's cessation of interference applies.

As is often the case with purposive arguments, Rhode Island's statement of a broadly stated purpose of the relevant statute provides helpful information while also posing the risk of proving too much. Not even Rhode Island argues that all collections of substantial revenues by a state are taxes. Traffic fines, see Ward v. Vill. of Monroeville, 409 U.S. 57, 58 (1972), and transfer payments from the federal government, see Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 581–82 (2012), come to mind quickly as two likely counterexamples. Similarly, both fees and taxes raise revenue and therefore superficially satisfy this broad purpose, but only the latter implicate the TIA. See Hill, 478 F.3d at 1245–46. So, in one of our previous tax-injunction cases, we observed that the above-stated "broad purpose does not cleanly resolve a case" in all instances. Trailer Marine Transp. Corp. v. Rivera Vazquez, 977 F.2d 1, 5 (1st Cir. 1992).[8]

---

see no reason why the district court in this case would be unable to make the appropriate determinations necessary for resolution on the merits. And in any event, this argument carries too little force to outweigh what we find to be the most reasonable reading of the TIA's text.

[8] Trailer Marine and another of our relevant precedents involved interpretation of the Butler Act, 48 U.S.C. § 872, not the TIA. See Trailer Marine, 977 F.2d at 4–5; San Juan Cellular

The district court here correctly observed that maintenance of public ways and bridges in a broad sense benefits the entire community, and more revenue from the general fund would have to be spent on the bridges were the tolls not collected. Alviti, 377 F. Supp. 3d at 132. This, though, can be said of virtually all activity by a state and all sources of state revenue: the activity serves the public benefit, and that benefit would need to be paid for (or lost) with general tax revenues but for the alternative revenue source. We have therefore tended to train our inquiry more narrowly on whether an injunction would pose a "threat to the central stream of tax revenue relied on by" the state. Trailer Marine, 977 F.2d at 6; see also In re Justices of the Supreme Court of P.R., 695 F.2d 17, 26–27 (1st Cir. 1982) (Breyer, J.). Here, the funds raised through RhodeWorks never enter that central stream. Rather, they are placed in a segregated account and expended by a single entity for a single purpose: highway and bridge maintenance. As such, the toll revenues stand quite apart from the state's central stream of government funding provided by traditional types of taxes, enough so as to undercut any argument that we should resist the force of our textual finding

---

Tel. Co. v. Pub. Serv. Comm'n of P.R., 967 F.2d 683, 684 (1st Cir. 1992). The Butler Act is an analogue to the TIA that applies to taxes enacted under the laws of Puerto Rico. "Despite slightly different wording, the two statutes have been construed in pari materia." Trailer Marine, 977 F.2d at 5.

that the word "tax" as used in the TIA most likely does not include tolls.

We also consider that Congress may have had countervailing purposes for passing a statute that does not, by its terms, bar federal-court challenges to all important state-revenue sources. Highway and bridge tolls are very likely to affect interstate commerce directly in a way that many classic taxes do not. Cf. GenOn Mid-Atl., LLC v. Montgomery Cty., 650 F.3d 1021, 1026 (4th Cir. 2011) ("[T]he absence of federal jurisdiction in this case would turn what are truly interstate issues over to local authorities."). A congressional drafter in 1937 could for this reason find no poor fit between purpose and text by relying on Cooley's definition of a tax as not including tolls.

## c.

We turn next to a more direct examination of our own precedent construing the TIA. In San Juan Cellular Telephone Co. v. Public Service Commission of Puerto Rico, 967 F.2d 683, 684 (1st Cir. 1992) (Breyer, C.J.), we considered a federal court challenge to a 3% (of gross revenue) charge imposed by the Puerto Rico Public Service Commission on a private cellular-telephone service provider. The question posed was whether the charge was

a tax under the Butler Act.[9]  We held that the charge was a regulatory fee, rather than a tax.  Id. at 686.  In so doing, we posited a spectrum "with a paradigmatic tax at one end and a paradigmatic fee at the other."  Id. at 685.  We observed further that a "classic 'tax' is imposed by a legislature upon many, or all citizens.  It raises money, contributed to a general fund, and spent for the benefit of the entire community."  Id.  A "classic 'regulatory fee,'" on the other hand, "is imposed by an agency upon those subject to its regulation."  Id.  "It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive.  Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses."  Id. (citation omitted).  In choosing between the two, we said, "[c]ourts . . . have tended . . . to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation."  Id.

Rhode Island would have us read San Juan Cellular as dictating the result in this case in its favor, for two reasons.

---

[9]  See supra note 8.

First, in a restyled form of its purposive argument, Rhode Island claims that San Juan Cellular's "emphasi[s]" on the "general benefit" inquiry must be given controlling weight. The district court agreed, observing that the revenues at issue are substantial, and that the general public benefits from the construction and maintenance of roads and bridges. Alviti, 377 F. Supp. 3d at 132. But the general public benefits from most public revenues, even regulatory fees that only fund the agency that protects the interests, for example, of cellular-phone services. See San Juan Cellular, 967 F.2d at 686. So we cannot reduce the "tax" or "not tax" inquiry to a single-factor test that will to some degree always be satisfied by the expenditure of public receipts. Context matters here, too. San Juan Cellular referred to a "general benefit" in distinguishing taxes from regulatory fees, not user fees. See id. at 685. As we observed in Trailer Marine, the distinction San Juan Cellular draws does not always provide much help in non-regulatory-fee cases. See Trailer Marine, 977 F.2d at 5. In any event, we do not think that the RhodeWorks tolls provide a "general benefit" characteristic of a "classic 'tax'" in the sense that San Juan Cellular uses those terms. The key question is whether the assessment "raises revenue for purposes that aren't especially beneficial or useful to the payers." Am. Council of Life Insurers v. D.C. Health Benefit Exch. Auth., 815 F.3d 17, 19 (D.C. Cir. 2016). Bridge tolls benefit the payer in

that each payment allows passage over the bridge, and the money raised is used to repair wear and tear on the bridge. See City of St. Louis v. Green, 7 Mo. App. 468, 473 (1879) ("Toll is the price of the privilege of travel over [a] particular highway, and it is a quid pro quo."), rev'd on other grounds, 70 Mo. 562 (1879).[10]

Second, Rhode Island directs our attention to the fact that, as an example of a "'general' type of public expenditure" indicative of a tax, San Juan Cellular pointed to a Seventh Circuit case involving a charge on trucks used to help pay for highway construction. 967 F.2d at 685 (citing Schneider Transp., Inc. v. Cattanach, 657 F.2d 128, 132 (7th Cir. 1981)). Schneider Transport, though, concerned what is more accurately labeled a flat tax than a toll. In that case, truck companies were required to pay an annual lump sum per truck to the companies' "base jurisdiction." Schneider Transp., 657 F.2d at 130. The funds were subsequently allocated to other states based on the distance

---

[10] This is no less the case here where only some vehicles (tractor-trailers) are charged the toll. Many fees exempt certain classes of payers. An entrance fee for a state park, for example, is a "classic fee," Hill, 478 F.3d at 1246, but we would not say that it becomes a tax merely because senior citizens and children get in for free. "[T]he hallmark of a fee is at least a rough match between the sum paid and the (broadly defined) benefit provided, as seen from the payer's perspective." Am. Council of Life Insurers, 815 F.3d at 19 (emphasis added). Such is the case here, especially considering Rhode Island's legislative finding that "just one, fully-loaded five-axle (5) tractor trailer has the same impact on the interstate [highway] as nine thousand six hundred (9,600) automobiles." R.I. Gen. Laws § 42-13.1-2(8).

driven by each truck over each states' roads, but the total amount owed by the companies did not vary based on the amount driven. Id. Such "unapportioned flat taxes" (from the payer's perspective) have been distinguished from "highway tolls" for lacking the "fair approximation of use or privilege for use." Am. Trucking Ass'ns v. Scheiner, 483 U.S. 266, 284, 289 (1987); see also Doran, 348 F.3d at 320 (observing that a highway toll "bears no resemblance to [Scheiner]'s flat tax" because "[t]he tolls . . . are imposed on a per-use basis"). The public expenditures (highway construction) that Schneider Transport's flat taxes funded were thus "general" in the sense that they were untethered from the benefit to the payer. As such, neither Schneider Transport nor San Juan Cellular's treatment of it inform the outcome of this case.

Rhode Island also posits that San Juan Cellular sets forth an exhaustive three-factor test that always controls.[11] The district court similarly applied a three-factor test, considering only:

> (1) the nature of the entity imposing the exaction; (2) the scope of the population subject to the exaction; and (3) whether the revenues from the exaction are expended for general public purposes, of a sort often

---

[11] Rhode Island redirects us to the multi-factor definition of "tax" in Boston Regional Medical Center, Inc. v. Massachusetts Division of Health Care Finance & Policy, 365 F.3d 51, 59 (1st Cir. 2004), as instructive in this case. As that test is specific to bankruptcy proceedings, we give it little weight.

> financed by a general tax, or whether the revenues provide more narrow benefits to regulated individuals and entities and serve to defray the agency's cost of regulation.

Alviti, 377 F. Supp. 3d at 131 (citing San Juan Cellular, 967 F.2d at 686). Other circuits have endorsed substantially similar constructions of San Juan Cellular, albeit not towards the end of deeming tolls to be taxes. See Bidart Bros. v. Cal. Apple Comm'n, 73 F.3d 925, 931 (9th Cir. 1996); see also Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130, 134 (4th Cir. 2000); Am. Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Mgmt. Dist., 166 F.3d 835, 837 (6th Cir. 1999).

Our own circuit, though, has not declared the three cited San Juan Cellular factors to be exhaustive, even for distinguishing regulatory fees from taxes. Rather, we have looked at additional factors in making the tax-fee determination, including whether "[t]he agency places the money in a special fund," San Juan Cellular, 967 F.2d at 686; see also Cumberland Farms, Inc. v. Tax Assessor, 116 F.3d 943, 946 (1st Cir. 1997); Trailer Marine, 977 F.2d at 6, whether collection of the charge is "assigned to the State Tax Assessor," Cumberland Farms, 116 F.3d at 946, whether the requested injunction "poses [a] threat to the central stream of tax revenues," Trailer Marine, 977 F.2d at 6, and whether the

enacting entity referred to the charge as a "tax,"[12] Cumberland Farms, 116 F.3d at 946. We therefore agree with the Fourth Circuit's description of San Juan Cellular as "merely provid[ing] flexible and versatile guidance in assessing where a particular charge sits on the tax-fee continuum." Norfolk S. Ry. Co. v. City of Roanoke, 916 F.3d 315, 319 n.2 (4th Cir. 2019); see also id. at 326 (Wynn, J., concurring).

The large majority of these factors weigh in favor of deeming the RhodeWorks tolls not to be taxes under the TIA. The toll, while authorized by the legislature just as all government charges are, is assessed and imposed by RIDOT, a state agency; the toll falls only on truckers;[13] the money goes into a special fund walled off from the state's general fund; RITBA collects the toll,[14]

---

[12] Rhode Island urges us to repudiate this last factor, observing that "[t]he practical impact, not the State's name tag, determines the answer to" whether a charge is a "tax" under federal law. Jefferson Cty. v. Acker, 527 U.S. 423, 439 (1999). Maybe so, but that does not mean the name tag should be given no weight. Cf. Sebelius, 567 U.S. at 543–46 (giving controlling weight to Congress's label for purposes of the AIA); Brett J. Wierenga, Comment, The Label Test: Simplifying the Tax Injunction Act After NFIB v Sebelius, 84 U. Chi. L. Rev. 2103, 2125–26 (2017) (suggesting a similar approach to the TIA).

[13] In Trailer Marine, we considered the class of "those seeking the privilege of driving on state highways" to be limited, such that this factor weighed against treating the assessment as a tax. 977 F.2d at 6. A fortiori, the class of tractor-trailer drivers must be considered narrow in scope.

[14] Rhode Island notes that RIDOT is authorized to enter into an agreement with the state's tax administrator to collect any "outstanding liability owed," R.I. Gen. Laws § 42-142-7(b), and that RIDOT has entered into such an agreement. This only applies,

apart from the central stream of revenue collected by the state; and the Rhode Island legislature uses the word "toll," rather than "tax," in the RhodeWorks statute.[15]

**D.**

Having considered text, purpose, and our own precedent, we find no compelling reason to complicate the distinction that likely prevailed in 1937:  charges fairly described as tolls are not taxes under the TIA.  That conclusion has the added benefit of aligning with prevailing expectations.  Since the TIA became law, there have been over a dozen cases in federal court challenging tolls.[16]  In none of those cases did the challenged state assert

---

however, in the relatively rare instances when a toll charge goes unpaid.

[15] Although we largely ignore the Boston Regional factors Rhode Island would have us use, see supra note 11, that test does provide us with one additional factor:  voluntariness.  We do not think Rhode Island scores any points on this front, however.  See Corr, 740 F.3d at 301 ("[I]t is clear that the toll is voluntarily paid. . . .  A motorist who objects to the toll may take another route."); Endsley, 745 N.E.2d at 715 ("Using the tollway is a voluntary choice made by road users.").

[16] See Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n, 934 F.3d 283, 288 (3d Cir. 2019); Am. Trucking Ass'ns v. N.Y. State Thruway Auth., 886 F.3d 238, 239 (2d Cir. 2018); Selevan v. N.Y. Thruway Auth., 711 F.3d 253, 254–55 (2d Cir. 2013) (per curiam); Yerger, 395 F. App'x at 880; Doran, 348 F.3d at 317–18; Endsley v. City of Chicago, 230 F.3d 276, 278 (7th Cir. 2000); Wallach, 930 F.2d at 1070; Clallam Cty. v. Dep't of Transp., 849 F.2d 424, 425–26 (9th Cir. 1988); Kerpen, 260 F. Supp. 3d at 570; AAA Ne., 221 F. Supp. 3d at 375; Angus Partners LLC v. Walder, 52 F. Supp. 3d 546, 550–51 (S.D.N.Y. 2014); Janes v. Triborough Bridge & Tunnel Auth., 977 F. Supp. 2d 320, 321 (S.D.N.Y. 2013), aff'd, 744 F.3d 1052 (2d Cir. 2014); Cohen v. R.I. Tpk. & Bridge Auth., 775 F. Supp. 2d 439, 441 (D.R.I. 2011); KLLM, Inc. v. Allen's Corner Garage & Towing Serv., Inc., No. 96 C 8478, 1998 WL 142396,

the TIA as a defense. And in the one case in which the court raised the question sua sponte, it retained jurisdiction. See Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n, 934 F.3d 283, 290 n.7 (3d Cir. 2019); Text Only Order, id., No. 19-1775 (July 8, 2019) (citing Alviti, 377 F. Supp. 3d at 130-32). Given this history, we take heed of the Supreme Court's observation: "In a procession of cases not rationally distinguishable from this one, no [judge] or member of the bar . . . ever raised a § 1341 objection that, according to [the state] in this case, should have caused [the courts] to order dismissal of the action for want of jurisdiction." Hibbs, 542 U.S. at 111-12. These cases "cannot be written off as reflecting nothing more than 'unexamined custom' or unthinking 'habit.'" Id. at 112 n.13 (citation omitted). Such is the uninterrupted procession of cases here. So in holding that what was very likely deemed not to be a tax in 1937 remains not a tax today, we can claim the virtue of leaving well enough alone.

## III.

One loose end remains. Rhode Island argues that principles of comity and federalism require dismissal even if the TIA does not apply. The comity principle predates the TIA and can be traced to Justice Field's opinion in Dows v. City of Chicago,

at *6 (N.D. Ill. March 24, 1998); see also Town of Portsmouth v. Lewis, 62 F. Supp. 3d 233, 236 (D.R.I. 2014) (mentioning the TIA -- despite the state's not raising it -- but nevertheless dismissing on other grounds), aff'd, 813 F.3d 54 (1st Cir. 2016).

78 U.S. (11 Wall.) 108, 109-10 (1870). "More embracive than the TIA, the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." Levin v. Commerce Energy, Inc., 560 U.S. 413, 417 (2010). In other words, the TIA is a "partial codification" of this principle. Id. at 424 (quoting Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n, 515 U.S. 582, 590 (1995)).

We are unaware of any case in which a court used the comity principle to expand the definition of the word "tax" as it is used in the TIA. Instead, the comity principle is commonly applied where a plaintiff seeks a remedy that is not literally included in the text of the TIA, which by its terms is limited to injunctions. See, e.g., Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 115-16 (1981) (damages action); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299 (1943) (declaratory judgment). In other cases, comity sometimes requires dismissal of third-party challenges to tax exemptions under state law. See Levin, 560 U.S. at 425-26 (distinguishing Hibbs, 542 U.S. 88); Coors Brewing Co. v. Méndez-Torres, 678 F.3d 15, 17-18 (1st Cir. 2012). No case to which Rhode Island points calls for the dismissal on comity grounds of a challenge to a state-imposed fee that is not a tax, and we see no reason to be the first.

**IV.**

For the foregoing reasons, we <u>reverse</u> and <u>remand</u> for further proceedings consistent with this opinion.